# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

ESTATE OF STEVEN JACOB JAHN, by
STEVEN C. JAHN, Personal Representative,

       Plaintiff-Appellant,

v

WILLIAM T. FARNSWORTH, THOMAS L.
VALKO, PATRICIA L. SPEILBURG and
MARYSVILLE PUBLIC SCHOOLS,

       Defendants-Appellees.

UNPUBLISHED
May 23, 2017

No.  329613
St. Clair Circuit Court
LC No.  15-000637-NO

---

Before:  SERVITTO, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Plaintiff appeals as of right an order granting summary disposition in favor of defendants on the ground that plaintiff's negligence and intentional or reckless infliction of emotional distress claims were barred by governmental immunity.  We affirm.

On March 19, 2012, Steven Jacob Jahn (Jake) was 17 years old and a senior at Marysville High School when he was suspected of stealing a teacher's laptop computer which held confidential student records as well as the teacher's course work.  Instead of contacting the police and pursuing criminal charges as advised by the school district's attorney, the matter was handled as a school discipline issue.  In accordance with the due process policy and guidelines set forth in the student handbook and on the school's website, Jake had the right to be informed of the allegations and evidence, to offer a defense to the allegations and, if necessary, to appeal the discipline.

On that day, Jake was brought to the front office at about 11:00 a.m. and was informed by the school principal, defendant William Farnsworth, and the assistant principal, defendant Thomas Valko, that he was a suspect in the theft of the laptop computer.[1]  Jake was told that the punishment for theft included a ten-day suspension, removal from all extracurricular activities,

---

[1] Defendant Patricia Speilburg was the acting superintendent and was involved in the investigation of this matter.

-1-

and a recommendation to the superintendent for a long-term suspension, i.e., suspension for the remainder of the school year. Jake was also told that surveillance videotape showed him leaving the teacher's classroom with a bag about 20 to 30 seconds after the laptop computer was disconnected from the school's network. Jake asked to see the videotape, but was told it was not available at that time. Although Jake initially denied taking the computer, he eventually admitted that he took it and that it was at his house.

After Jake's admission, a conference call was placed to Jake's father Steven, the personal representative in this case. Jake told his father where the laptop computer was located in his bedroom and Steven brought the laptop to the school at about 12:00 p.m. The laptop was examined and it was determined that Jake had "reimaged" it with different software, and the user name and password had been reset. Steven was advised of Jake's punishment, including suspension, but was also told that Jake could continue his education and complete his coursework at home. There was also a discussion about the possibility that Jake may have been involved in other thefts at the school involving computer equipment and cell phones, which Jake denied. Steven testified that Farnsworth and Valko told Jake that, if he did not confess, they were going to contact the police with regard to the other thefts, as well as notify the colleges that Jake was interested in attending about the events that had occurred. Farnsworth and Valko both denied that they made these statements to Jake. In any case, Valko escorted Jake to his car at about 12:45 p.m., at which time Jake became upset. Jake eventually shook Valko's hand and thanked him for not involving the police. Valko then returned to his office and told Jake's father that Jake was upset and to keep an eye on him. Jake drove home and, within a short time, his father arrived home as well.

Jake was home with his family until about 4:00 p.m. or 4:30 p.m. when he left his house without anyone's knowledge. At about 5:20 p.m. Steven realized that Jake was not home, but Jake's cell phone was home. However, at about 5:00 p.m., the police were dispatched to the scene of a fatal accident on I-69. Jake had driven his vehicle into a concrete pillar, causing the car to catch fire. Jake died of traumatic injuries and his death was ruled a suicide.

Three years later, this lawsuit was filed. In Count I, a negligence claim, plaintiff's allegations included that defendants breached their duties to Jake by: (a) interrogating him in a closed room without his parents or counsel; (b) misrepresenting facts to him during their interrogation; (c) intimidating him; (d) lying to him about the videotape showing him in possession of the laptop; (e) threatening him about a felony conviction and his future college plans; (f) suspending him for the remainder of the school year; and (g) failing to follow their suicide prevention policies although Jake was suicidal. In Count II, an intentional or reckless infliction of emotional distress claim, plaintiff alleged that because of defendants' actions set forth above, Jake was subjected to severe emotional distress that caused him to commit suicide.

Subsequently, defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(7), (8) and (10). Defendants noted that this was the second lawsuit filed by plaintiff arising out of Jake's suspension from school for stealing a teacher's laptop computer. The first case was filed in the federal district court and alleged procedural and substantive due process violations under 42 USC § 1983. *Jahn v Farnsworth*, 33 F Supp 3d 866 (ED Mich, 2014). That case was dismissed on defendants' motion for summary judgment after the district court held that Jake received all the procedural due process to which he was entitled and that his substantive due

process rights were not violated. The Sixth Circuit Court of Appeals affirmed the decision "in all respects." *Jahn v Farnsworth*, 617 Fed Appx 453, 464 (CA 6, 2015).

In their motion for summary disposition of the claims brought in this case, defendants argued that plaintiff's claims were barred by res judicata and collateral estoppel considering the dismissal of the federal case. Defendants further argued that plaintiff's claims were barred by governmental immunity. In particular, the claims against the school district were barred because the gross negligence exception only applies to individuals not governmental agencies and governmental entities are absolutely immune from intentional tort claims. The negligence claim against the individual defendants was also barred because: (1) defendants owed no duty to Jake at the time of his death since he was not on school property and had been released to the custody of his parents several hours earlier; (2) if defendants did owe Jake a duty, their actions related to Jake's suspension were not grossly negligent, i.e., did not constitute "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results;" and (3) defendants were not "the proximate cause" of Jake's death because the one most immediate, direct cause of Jake's death was his own act of committing suicide. Further, defendants argued, plaintiff's intentional or reckless infliction of emotional distress claim must be dismissed because none of their actions could be considered "extreme and outrageous." In summary, defendants argued that plaintiff's case must be dismissed in its entirety.

Plaintiff responded to defendants' motion for summary disposition, arguing first that neither res judicata nor collateral estoppel barred his claims because these state-law claims were dismissed without prejudice by the federal court and the ultimate issues to be decided in this action were not the same as those in the federal action. Second, the individual defendants were not entitled to governmental immunity for the intentional or reckless infliction of emotional distress because the issue whether they acted in good faith in their treatment of Jake was a question for the jury. That is, reasonable minds could differ on the issue whether defendants' conduct was "extreme and outrageous" considering defendants' lies about the availability of the videotape and their intimidation when they "teamed up to grill [Jake] in a closed room with no counsel or adult in Jake's corner present." Third, the individual defendants were not entitled to governmental immunity with regard to plaintiff's negligence claim because questions of fact existed on the issues whether they were grossly negligent by failing to follow their suicide prevention policies and whether defendants' actions were the proximate cause of Jake's death. In support of plaintiff's claim, he referred to reports from an educational expert and a psychiatrist which indicated that, in light of Jake's apparent distress, defendants should have taken further steps to assess his mental health. Accordingly, plaintiff argued, defendants' motion for summary disposition should be denied.

Subsequently, the trial court issued a lengthy written opinion granting defendants' motion for summary disposition, holding that governmental immunity barred plaintiff's claims. First, the court rejected defendants' argument that plaintiff's claims were barred by res judicata or collateral estoppel, holding that the gross negligence and intentional or reckless infliction of emotional distress claims were not adjudicated in the federal case; rather, they were dismissed without prejudice. Second, governmental immunity barred plaintiff's claims against Marysville Public Schools which was engaged in the education of students at the time of this discipline issue. Third, governmental immunity barred plaintiff's claims against the individual defendants. The court concluded that reasonable minds could not find that defendants engaged in reckless or

negligent conduct. The trial court rejected plaintiff's argument that defendants should have followed the school's suicide prevention policies and noted that the facts relied upon by plaintiff's purported experts were not supported by the evidence but were, at best, speculative. The trial court also noted that defendants owed no duty to Jake at the time he committed suicide because he was off school grounds and had been released in to his father's custody several hours earlier. But even if defendants owed Jake such duties, those duties were not breached by defendants. None of the specified actions by defendants were so reckless as to demonstrate a substantial lack of concern for whether an injury results. Moreover, defendants' conduct was not the proximate cause of Jake's death; rather, it was Jake's decision to commit suicide that was the one most immediate proximate cause of his death. Accordingly, the trial court concluded, plaintiff's claims of negligence and intentional or reckless infliction of emotional distress were barred by governmental immunity. Thereafter, an order was entered granting defendants' motion for summary disposition. This appeal followed.

Plaintiff argues that the trial court erred in concluding that governmental immunity barred his intentional or reckless infliction of emotional distress claim because reasonable minds could find that defendants' conduct was "extreme and outrageous." We disagree.

The applicability of governmental immunity is reviewed de novo as a question of law. *Herman v Detroit*, 261 Mich App 141, 143; 680 NW2d 71 (2004). We also review de novo a trial court's decision on a motion for summary disposition. *Id*. A motion brought under MCR 2.116(C)(7) may be supported by affidavits, depositions, admissions, or other documentary evidence. *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008) (citation omitted). "If no facts are in dispute, or if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred by governmental immunity is an issue of law." *Pierce v Lansing*, 265 Mich App 174, 177; 694 NW2d 65 (2005).

Governmental employees, like the acting superintendent, high school principal, and assistant principal in this case, are immune from intentional-tort liability if the challenged actions were (1) undertaken during the course of employment and within the scope of authority, (2) undertaken in good faith or without malice, and (3) discretionary in nature, not ministerial. *Odom*, 482 Mich at 480. In this case, it is undisputed that the actions by the three individual defendants relating to Jake's suspension were undertaken in the course of their employment with Marysville Public Schools, that disciplinary actions were within the scope of their authority, and that such actions were discretionary in nature. Plaintiff claims, however, that the actions were not undertaken in good faith or without malice. Instead, plaintiff argues, defendants' actions were extreme and outrageous and gave rise to a claim for intentional or reckless infliction of emotional distress which was not barred by governmental immunity.[2]

---

[2] To the extent plaintiff argues that the trial court did not address this issue in detail, we note that, even if that is true, this Court may address this legal issue because all of the facts necessary for its resolution have been presented. See *Sutton v Oak Park*, 251 Mich App 345, 349; 650 NW2d 404 (2002).

To establish a claim of intentional or reckless infliction of emotional distress, the plaintiff must show: "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Lewis v LeGrow*, 258 Mich App 175, 196; 670 NW2d 675 (2003) (quotation marks and citation omitted). To be considered "extreme and outrageous," the defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id*. (quotation marks and citation omitted). It is generally the trial court's determination whether conduct is so extreme and outrageous as to allow recovery unless reasonable minds could disagree. *Id*. at 197. The second element of intent or recklessness may be proven by showing that the defendant specifically intended to cause emotional distress to the plaintiff or that the defendant's conduct was so reckless that "any reasonable person would know emotional distress would result." *Id*. (quotation marks and citation omitted).

Plaintiff argues that reasonable minds could differ on the issue whether defendants' conduct was so extreme and outrageous that recovery is permitted. In support of his claim plaintiff asserts that defendants intimidated, threatened, lied to, and badgered Jake during the due process hearing which led to Jake's confession that he did, in fact, steal the teacher's laptop. And defendants continued to threaten Jake about other school thefts even after he confessed to stealing the laptop. However, we have reviewed the record and find no evidence of conduct that was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id*. at 196.

Plaintiff's allegations of "extreme and outrageous" conduct include that defendants Valko and Farnsworth: questioned Jake in a closed room without his parents present; lied to Jake about the availability of the videotape showing him leaving the teacher's classroom within seconds of the laptop being disconnected from the school network; intimidated Jake by their positions of authority and with their questioning about the stolen laptop; told Jake that they would notify the police about other thefts at the school; told Jake that he could be convicted of a felony with regard to other property stolen at the school if he was involved; threatened to notify the colleges that Jake was interested in attending about the events that had occurred; told Jake that he was definitely suspended for the remainder of the school year; and told Jake that he could not participate in any extracurricular activities for the remainder of the year. Reasonable minds could not conclude that any of these alleged actions constituted "extreme and outrageous" conduct so as to subject defendants to liability on this claim. And contrary to plaintiff's claim, the trial court did not confine its analysis to the events that occurred only during the due process hearing. Rather, the trial court simply noted that the purported "threats" made by defendants did not coerce Jake to confess to stealing the laptop because most of the alleged "threats" were made after Jake's confession. Further, the court noted, the purported "threats" did not coerce Jake to confess to stealing other property that was missing at the school because he continued to deny involvement in that regard. Accordingly, the trial court properly concluded that plaintiff's claim of intentional or reckless infliction of emotional distress was barred by governmental immunity.

Plaintiff also argues that the trial court erred in concluding that governmental immunity barred his negligence claim because the individual defendants' actions were grossly negligent and were the proximate cause of Jake's death. We disagree.

Pursuant to MCL 691.1407(2), governmental employees are immune from liability for negligent torts if the employee caused the alleged injury while acting in the course of employment and (1) was acting within the scope of authority, (2) the government agency was engaged in a governmental function, and (3) the employee's conduct does not amount to gross negligence that was the proximate cause of the alleged injury. See also *Odom*, 482 Mich at 479-480. "Gross negligence" is defined by the statute as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). "The phrase 'the proximate cause' is best understood as meaning the one most immediate, efficient, and direct cause preceding an injury." *Robinson v Detroit*, 462 Mich 439, 459; 613 NW2d 307 (2000).

Plaintiff argues that the issue whether the individual defendants' conduct was grossly negligent was a question of fact for the jury. In particular, plaintiff claims, defendants were grossly negligent because they failed to follow their suicide prevention policies considering the danger of suicide. However, as the trial court held, there was no evidence that Jake was, in fact, suicidal while he was on school property. Although Jake did become upset while being escorted to his car, there was no evidence that Jake was suicidal at that time or that defendants should have considered Jake to be suicidal. Even Jake's father, who was at the school with Jake, saw no signs that Jake was extremely upset or was considering suicide otherwise Jake's father clearly would not have allowed him to drive home alone. Further, Jake did not leave the school in his vehicle and immediately commit suicide; rather, he was home with his family for several hours before he committed suicide.

Plaintiff also argues that the trial court improperly dismissed the opinions of his two experts that the school should have recognized that Jake was "distraught" and reacted with some type of suicide intervention. But, as the trial court held, even if Jake was "distraught," there was no evidence that he was suicidal while on school property. We also reject plaintiff's argument that the trial court improperly applied the doctrines of res judicata and collateral estoppel to dismiss plaintiff's negligence claim. The trial court's opinion merely indicated that the "expert report" authored by Dr. Mary Spence and submitted in support of plaintiff's federal district court case did not tend to establish plaintiff's claim of gross negligence. In particular, Dr. Spence had stated in her conclusions that Jake "was not afforded mandated due process rights in the form of an appeal, including a formal hearing with an impartial party" but, the trial court noted, that legal conclusion was rejected by the federal courts. In any case, the trial court properly held that the evidence of record did not support plaintiff's claim that the individual defendants' conduct of failing to initiate suicide policies was "so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a); see also *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004).

Plaintiff further argues that a question of fact existed as to whether defendants were grossly negligent when they lied to Jake about the availability of the videotape, told Jake that if he did not confess to other thefts at the school they would contact the colleges he wanted to attend and advise them of these matters, and told Jake they would contact the police and he could be convicted of a felony if he was involved in the other thefts. However, as the trial court held, reasonable jurors could not find gross negligence from the evidence presented. See *Tarlea* 263 Mich App at 90. None of the conduct complained of by plaintiff was "so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a).

Moreover, as the trial court held, even if any of defendants' actions constituted gross negligence, defendants were still entitled to governmental immunity with regard to plaintiff's negligence claim because defendants' actions were not "the proximate cause" of Jake's death. See *Robinson*, 462 Mich at 462, citing MCL 691.1407(2)(c). The one most immediate and direct cause of Jake's death was not defendants' conduct that occurred hours earlier in the day; rather, it was Jake's own conduct, i.e., his apparent decision to intentionally drive his vehicle into a concrete pillar which caused him to sustain fatal injuries. See *Cooper v Washtenaw Co*, 270 Mich App 506, 509; 715 NW2d 908 (2006). Accordingly, the trial court properly concluded that plaintiff's negligence claim against the individual defendants was barred by governmental immunity.[3]

Affirmed. Defendants are entitled to tax costs as the prevailing parties. MCR 7.219(A).

/s/ Deborah A. Servitto
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood

---

[3] Plaintiff does not challenge on appeal the dismissal of his claims as against defendant Marysville Public Schools.