*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBIN SAKOFSKE, as Personal Representative
of the ESTATE OF JOHN SAKOFSKE,

UNPUBLISHED
October 22, 2019

Plaintiff-Appellee,

v

No. 342714
Wayne Circuit Court
LC No. 16-001084-NI

HEATHER LOUISE GERING, COUNTY OF
WAYNE, and WAYNE COUNTY
DEPARTMENT OF PUBLIC SERVICES, doing
business as WAYNE COUNTY ROADS
DIVISION,

Defendants-Appellants.

Before: RIORDAN, P.J., and K. F. KELLY and CAMERON, JJ.

PER CURIAM.

In this negligence action, defendants Heather Gering, County of Wayne, and Wayne County Department of Public Services appeal the trial court's order denying in part their motion for summary disposition premised on claims of governmental immunity. We reverse and remand.

## I. FACTUAL BACKGROUND

This matter arises from the death of John Sakofske after the tractor-trailer that he was driving collided with the rear end of a Wayne County dump truck on November 12, 2015.

On November 12, 2015, LeDonn Majors, a foreman employed by defendant Wayne County Department of Public Services, was instructed to have his crew "sweep" a wall that runs along the ramp from eastbound Michigan Avenue to southbound I-275. On that day, Majors drove to the worksite in his pickup truck and met with his work crew. In addition to the individuals who were responsible for cleaning the wall in question, Majors' work crew consisted of Darylann Spencer, Annette Lowe, and Alfred Washington. Spencer, Lowe, and Washington all operated dump trucks that had flashing arrow boards on the back, which served to instruct motorists to move out of the right lane of travel and to protect the workers who were located on

the shoulder of I-275. The dump trucks were filled with gravel so that the dump trucks would not lose control and hit any workers on the project if they were hit by other motorists. During the cleaning process, Majors directed the positioning of the dump trucks. Majors also directed his work crew to perform the project in sections and to "move up" after each "section" of the wall was swept.

Sometime during the afternoon of November 12, 2015, Majors requested a fourth "arrow board dump truck" in order to provide more protection to his workers. Subsequently, Gering arrived at the worksite driving an arrow board dump truck. Majors instructed Gering where to position the dump truck. Based on Majors' instructions, the trucks were positioned as follows on I-275: (1) Washington's dump truck was positioned behind Gering's dump truck on the shoulder of the ramp, (2) Gering's dump truck was approximately 700 feet in front of Washington's dump truck in the right lane of traffic past where the ramp lane on I-275 ended, (3) Lowe's dump truck was also in the right lane approximately 700 feet in front of where Gering parked her dump truck, and (4) Spencer's dump truck was parked directly in front of Lowe's dump truck in the right lane. Majors' pickup truck was parked on the shoulder of I-275, near Spencer and Lowe's dump trucks.

According to Gering, after she had been at the job site for about 10 minutes, she saw Sakofske's tractor-trailer traveling southbound in the right lane of I-275. Gering did not see Sakofske's tractor-trailer slow down as it approached her dump truck, and she estimated that Sakofske was traveling at least 70 miles per hour. Gering assumed Sakofske would have time to merge into another traffic lane. However, Sakofske did not move into a different traffic lane. His tractor-trailer hit the back of Gering's dump truck, and Gering's dump truck was pushed forward and to the left.

At the time of the accident, Majors was looking in the rearview mirror of his pickup truck, checking on his workers, when he saw Sakofske's tractor-trailer approaching Gering's dump truck. Seconds later, Majors saw the tractor-trailer hit the arrow board on the back of Gering's truck. Majors testified that Gering's truck "kind of jackknifed" because of the impact. According to Majors, Gering's dump truck was not moving at the time of the accident.

Michigan State Police Trooper Joshua Martin Reeber, the first trooper to arrive at the scene of the accident, testified that he observed that Gering's dump truck had its emergency brake engaged. Michigan State Police Trooper Brad Conner also investigated the accident on that day. He testified that, on the basis of the evidence found at the site, Gering's dump truck "would have been completely in the right [travel] lane" at the time of the accident.

Sakofske died as a result of accident-related injuries, and plaintiff filed a complaint against defendants, alleging a claim of gross negligence against Gering and a claim of negligent operation of a government motor vehicle against Wayne County under a theory of respondeat superior. Defendants answered plaintiff's complaint, wherein they generally denied plaintiff's allegations and raised a number of affirmative defenses, including plaintiff's failure to plead facts in avoidance of governmental immunity.

During the course of discovery, Spencer, who was in the dump truck in front of Lowe at the time of the collision, was deposed. During Spencer's deposition, plaintiff's counsel asked Spencer, "Who was blocking traffic?" Spencer replied:

> I know [Lowe] was behind me and then they called [Gering] up and [Gering] was in that gore area[1] putting up her flasher board and I'm looking out my mirror.[2] [Gering was] picking up her flasher board and I think [Majors] asked her was she ready, she said she was ready and she moved up, and when she moved up, that's when that accident happened.

Spencer was unsure if the "ramp" was blocked at the time of the accident. She recalled that, after Gering arrived at the worksite, Lowe moved her dump truck behind Spencer's dump truck. When plaintiff's counsel asked Spencer if she thought "the ramp was now opened," Spencer replied:

> It could have been opened up. I can't remember. I know when [Gering] came, I watched her in my mirror . . . . [Gering] was looking at her flasher, making sure it was up, and when [the flasher board] was up, [and Majors] asked her was [sic] she ready. [Gering] said yes, and when she pulled up, I pulled up, [Lowe] pulled up and bam, that's when it happened.

Spencer specifically recalled that she was moving her dump truck forward in order to make room for Lowe and Gering when she "heard the boom." Spencer explained that she did not know "how far back" Gering was, but she explained:

> I know when [Gering] got in that [dump] truck and said I'm ready, she pulled out and all I heard was boom, and when I heard the boom, I immediately, I said 'Oh, we done [sic] got hit' because I know, we get hit all the time. I looked in the mirror and her truck, she was moving up. When I looked in this mirror here, her truck was doing this and then it came, you know, across the lanes.

Spencer further explained that, "[w]hen [she] heard the boom, [she] immediately looked out this [sic] mirror and [Spencer] saw [Gering's dump] truck" move across two of the southbound travel lanes.

When asked by plaintiff's counsel if it was "a very short period of time between the time that [Gering] moved up [from the "gore" into the right travel lane] and the accident happened," Spencer relied "Yes." Spencer estimated that it was "maybe 10 [minutes]" or "maybe 15

---

[1] A "gore area" is a triangular-shaped area where the highway and the entrance ramp converge.

[2] Spencer testified that Gering had to activate her flasher board once she arrived at the worksite. According to Spencer, after Gering ensured that the flasher board was activated, Gering informed Majors that she was "ready" and then moved the dump truck into position in the right lane of I-275.

[minutes]" after Gering said "she was ready." The following exchange then occurred between Spencer and plaintiff's counsel:

>*Plaintiff's Counsel*: So it sounds like it was very quick, a matter of seconds?

>*Spencer*: It was probably about 5 minutes, something like that.

>*Plaintiff's Counsel*: So if I started my clock right now and we waited 5 minutes, you think that would be accurate?

>*Spencer*: Let me think. [Majors] told [Gering] to get in position. She was out—that 5 minutes is the part she got out and was checking [the flasher board], right.

>*Plaintiff's Counsel*: Okay. So I'm asking for the shorter time period, from the time period that she got back in the truck and [Majors] said are you ready and then [Gering] started moving. From that point in time 'till [sic] the impact, sounds like that was a matter of seconds?

>*Spencer*: Yes, could be, yes.

When plaintiff's counsel asked Spencer if Gering had "come to a stop in the [right] travel lane before she was struck," Spencer replied, "That I don't know." Plaintiff's counsel asked if Gering could have "potentially" still been moving into the [right travel] lane at the time of the accident, Spencer responded, "Possibly, yes." Plaintiff's counsel then asked Spencer if her "recollection, though, is that [Gering] moved from the gore into the travel lane and may still have been moving into position when she was struck, according to what [Spencer] saw," and Spencer replied, "Yes, [Gering] might have been moving." However, when defendants' counsel asked Spencer if she saw Gering "positioning her vehicle," Spencer responded: "I didn't see her get back in her truck [after adjusting her flasher board], but I did see, hear, I saw her moving with her flasher in the back. . . . I didn't see her get in the vehicle." Defendants' counsel then asked Spencer, "So you never saw [Gering] move her vehicle," and Spencer replied, "No."

Spencer testified at her deposition that she spoke with a law enforcement officer after the accident. Spencer indicated that she told the officer "that [she] didn't actually see the initial impact, but when [she] heard that, [she] looked out of [her] windows and seen [sic]."

Spencer later executed an affidavit pertaining to her deposition testimony. In her affidavit, Spencer explained that, "[b]efore the crash, [Gering's] dump truck was already positioned in the right lane to block traffic," and that it was "not true" that she testified that Gering "caused the accident by pulling out in front of" Sakofske's tractor-trailer, "if anyone [was] saying that." Spencer also explained that she "did not see the actual crash," but she heard Sakofske's tractor-trailer hit Gering's dump truck.

Plaintiff's expert crash reconstruction witness, Timothy Robbins, opined that the "most likely scenario" was that Gering's dump truck "impeded" into the tractor-trailer's "path of travel," and he confirmed that he meant that Gering's dump truck "pulled out in front of"

-4-

Sakofske's tractor-trailer. Robbins stated that his opinion was based upon Spencer's testimony, specifically the portion of Spencer's testimony where Spencer discussed how she saw Gering's dump truck move after Spencer heard a "boom" and how Spencer confirmed that she remembered seeing that Gering "moved up from the gore into the travel lane and it was that point in time that the accident happened."

After the close of discovery, defendants filed a motion for summary disposition. In relevant part, defendants argued that they were entitled to governmental immunity under the governmental tort liability act ("GTLA"), MCL 691.1401 *et seq.* More specifically, defendants argued that the "motor vehicle exception" in the GTLA did not apply because Gering was not "operating" her dump truck at the time of the accident. Defendants further argued that plaintiff's claim against Gering failed because plaintiff could not present any evidence that Gering was grossly negligent.

In response, plaintiff argued that defendants' motion for summary disposition pertaining to the claim of gross negligence against Gering should be denied because Gering caused the accident by moving directly into the path of Sakofske's vehicle. Plaintiff relied on Spencer's deposition testimony and Robbins' opinion testimony when making this argument. Plaintiff also contended that, pursuant to MCL 691.1405, Gering was "operating" her dump truck at the time of the accident because there was evidence that she was driving her dump truck or that she had only stopped her dump truck moments before the accident occurred.

The trial court denied defendants' motion for summary disposition in part on the basis of the testimony of Spencer and Robbins. The trial court explained that Spencer's affidavit was "at odds with" Spencer's deposition testimony, and the court believed that the "discrepancy" in Spencer's testimony created a question of fact. The court noted that plaintiff's expert witness, Robbins, also opined that "there was no other logical or reasonable explanation" for the accident other than that Gering pulled out in front of Sakofske, "essentially cutting him off, impeding" Sakofske's "travel lane and causing a fatal accident." The trial court reiterated that Spencer "testified that Gering proceeded from the right shoulder of southbound I-275 into the right travel lane directly into the path" of Sakofske's tractor-trailer "while causing the fatal collision." The trial court further ruled that there was "some question" about whether Gering's dump truck "was stationary or moving, or how long it was stationary" and that, even if Gering was "stopped at the moment of impact," there was some "dispute whether her vehicle had been stopped for just brief moments before the impact or a longer period of time."

This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). "A defendant is entitled to summary disposition under MCR 2.116(C)(7) if the plaintiff's claims are barred because of immunity granted by law." *Milot v Dep't of Transp*, 318 Mich App 272, 275; 897 NW2d 248 (2016). "A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). However, "the substance or content of the supporting proofs must be

admissible in evidence." *Id.* Further, "[t]he contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant." *Id.* "If there is no relevant factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide." *Snead v John Carlo, Inc*, 294 Mich App 343, 354; 813 NW2d 294 (2011). "If, however, a pertinent factual dispute exists, summary disposition is not appropriate." *Id.*

## III. ANALYSIS

With respect to plaintiff's negligent operation of a government motor vehicle claim, "[u]nder the GTLA, governmental agencies and their employees are generally immune from tort liability when they are engaged in the exercise or discharge of a governmental function." *Ray v Swager*, 501 Mich 52, 62; 903 NW2d 366 (2017) (*Ray I*). "The act provides several exceptions to this general rule." *Id.* As relevant here, one exception to governmental immunity is the motor vehicle exception, which is provided by MCL 691.1405. Under MCL 691.1405, "[g]overnmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is [the] owner . . . ."

Our Supreme Court has held that the "operation of a motor vehicle" in MCL 691.1405 means that the motor vehicle is being operated *as* a motor vehicle; therefore, the motor vehicle exception encompasses only those "activities that are directly associated with the driving of a motor vehicle." *Chandler v Muskegon Co*, 467 Mich 315, 321; 652 NW2d 224 (2002). This Court has held that a plaintiff's injuries did not result from the "operation" of a motor vehicle where that plaintiff collided with a city vehicle that was stopped on a road and "had been stopped for approximately three to five minutes in order to permit its passenger to inspect a public utility." *Poppen v Tovey*, 256 Mich App 351, 355; 664 NW2d 269 (2003). Thus, stationary vehicles may be exempt from the motor vehicle exception of the GTLA. See *id.*

In this case, it is undisputed that Gering's dump truck was stationary in the right lane of I-275 at the time of the collision. More specifically, both Gering and Majors testified that Gering's dump truck had been stationary for about 10 minutes at the time of the accident. Additionally, Washington and Lowe both averred that Gering's dump truck was parked in the right lane at the time of the accident, and they denied that Gering caused the accident by pulling out in front of Sakofske. The law enforcement officers who investigated after the accident opined that Gering's truck was completely in the right lane of traffic at the time of the collision and that the truck's emergency brake was activated at the time of the collision.

Although the trial court relied on the testimony of Spencer when finding that a question of fact existed, when examining Spencer's testimony, it is clear that Spencer unequivocally testified that she did not see the collision. Rather, she only heard Sakofske's tractor-trailer collide with the back of Gering's dump truck and then saw the aftermath of the collision. Although Spencer attempted to describe the general sequence of events related to the accident during her deposition, she only provided speculative testimony regarding the movement—or lack thereof—of Gering's dump truck immediately preceding or during the accident. More specifically, Spencer testified that it was "possible" that Gering's truck was still moving into right lane at the time of the collision. The speculative nature of Spencer's testimony was

highlighted by the fact that, later in the deposition, Spencer agreed that she did not see Gering get into the dump truck after Gering inspected the "flasher sign," she did not see Gering move the dump truck, and she did not see Gering position the dump truck in the right lane. In fact, upon questioning by plaintiff's counsel, Spencer agreed that had taken only seconds—not 10 or 15 minutes. Consequently, Spencer was unable to give a specific timeline as to when Gering actually began to move the dump truck into the position that Majors mandated in the right lane.

It is well settled that, although "[c]ircumstantial evidence can be sufficient to establish a genuine issue of material fact, . . . mere conjecture or speculation is insufficient." *McNeill-Marks v MidMichigan Med Center-Gratiot,* 316 Mich App 1, 16; 891 NW2d 528 (2016). We conclude that Spencer's testimony regarding the potential movement and positioning of Gering's dump truck amounted to speculation and conjecture given that Spencer did not see Gering move the truck into the right lane and did not see the collision take place. Thus, Spencer's testimony was not sufficient to create a genuine issue of material fact. See *id.* Further, because Robbins' opinion testimony was based solely upon Spencer's mere speculation concerning the location of the dump truck at the time of the collision, the opinion testimony offers no support for the trial court's decision to deny defendants' motion for summary disposition.

Therefore, because Gering was not engaged in "activities that are directly associated with the driving of a motor vehicle" at the time of the collision, the motor vehicle exception does not apply. See *Chandler*, 467 Mich at 321. Consequently, the trial court erred by denying defendants' motion for summary disposition with regard to plaintiff's negligent operation of a government motor vehicle claim. See *Snead*, 294 Mich App at 354.

Defendants also contend that the trial court erred when it denied defendants' motion for summary disposition pertaining to plaintiff's gross negligence claim against Gering, as there was no evidence that Gering was grossly negligent. We agree.

"Generally, governmental employees acting within the scope of their authority are immune from tort liability except in cases in which their actions constitute gross negligence." *Tarlea v Crabtree*, 263 Mich App 80, 89; 687 NW2d 333 (2004). " 'Gross negligence' is defined by statute as 'conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.' " *Wood v City of Detroit,* 323 Mich App 416, 423; 917 NW2d 709 (2018), quoting MCL 691.1407(8)(a). " 'Evidence of ordinary negligence is not enough to establish a material question of fact regarding whether a government employee was grossly negligent.' " *Wood*, 323 Mich at 423-424, quoting *Chelsea Investment Group LLC v Chelsea*, 288 Mich App 239, 265; 792 NW2d 781 (2010). Thus, a plaintiff must present evidence or allege that a defendant's "contested conduct was substantially more than negligent." *Costa v Community Emergency Med Servs, Inc*, 475 Mich 403, 411; 716 NW2d 236 (2006).

Plaintiff's gross negligence claim is premised on allegations that Gering "pulled her vehicle into the right lane of traffic and into the path of Mr. Sakofske." Plaintiff relies on the testimony of Spencer to support this argument. However, as discussed above, Spencer testified that she did not see Gering move her vehicle from the ramp into the right lane of I-275. She further testified that she did not see the collision. Because the only testimony that Spencer offered concerning the movement and positioning of Gering's vehicle at the time of the accident was speculative, it is insufficient to support finding a question of fact. See *McNeill-Marks,* 316

Mich App at 16. Thus, there is no evidence to support that Gering was negligent—let alone grossly negligent. The trial court therefore erred when denying defendants' motion for summary disposition on plaintiff's gross negligence claim. See *Snead*, 294 Mich App at 354. Consequently, we need not address defendants' argument that the trial court erred by failing to consider whether Sakofske was presumptively negligent under MCL 257.402(a) when he hit the back of Gering's dump truck. See *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998) ("As a general rule, an appellate court will not decide moot issues.").

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Kirsten Frank Kelly
/s/ Thomas C. Cameron