*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANTHONY MICHAEL COLLINS,

      Plaintiff-Appellee,

v

ASHLEY KOFAHL and CITY OF YPSILANTI,

      Defendants-Appellants.

UNPUBLISHED
March 21, 2019

No. 340508
Washtenaw Circuit Court
LC No. 16-000332-NI

Before: M. J. KELLY, P.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

Defendants City of Ypsilanti and Officer Ashley Kofahl appeal as of right the trial court order denying their motion for summary disposition under MCR 2.116(C)(7) (governmental immunity). We affirm.

## I. BASIC FACTS

On September 15, 2015, Kofahl, who was driving in a marked police vehicle, collided with plaintiff, Anthony Collins, as he was attempting to make a left-hand turn at an intersection. Before the crash, Kofahl and another Ypsilanti police officer responded to a silent alarm at a local business. Kofahl activated the emergency lights on her police vehicle, but did not activate the siren. She was driving approximately 57 miles per hour. The speed limit, however, was only 30 miles per hour. As Kofahl approached the intersection where the crash occurred, she was notified that it was a false alarm. In response, she deactivated the emergency lights and proceeded through the intersection. Although she applied her brakes, the record reflects that at the time of the crash she was still traveling in excess of the speed limit. Her vehicle made contact with the driver's side of Collins's vehicle. Collins sustained severe physical injuries.

Collins filed a complaint against the City and Kofahl, alleging negligence, owner liability, and gross negligence. He pleaded that the motor-vehicle and gross-negligence exceptions to governmental immunity applied. The City and Kofahl moved for summary disposition under MCR 2.116(C)(7), arguing that Collins's claims were barred by the governmental tort liability act (GTLA), MCL 691.1401 *et seq.* The trial court determined that governmental immunity did not apply and it denied summary disposition.

## II. SUMMARY DISPOSITION

## A. STANDARD OF REVIEW

Defendants argue that the trial court erred by denying their motion for summary disposition.

> This Court reviews de novo a trial court's decision on a motion for summary disposition. MCR 2.116(C)(7) permits summary disposition of a claim that is barred by immunity granted by law. In reviewing a motion under MCR 2.116(C)(7), a court is required to consider not only the pleadings, but also any affidavits, depositions, admissions, or other documentary evidence filed or submitted by the parties. The contents of the complaint must be accepted as true unless contradicted by the documentary evidence, which must in turn be considered in a light most favorable to the nonmoving party. The trial court properly grants a motion for summary disposition under MCR 2.116(C)(7) when the undisputed facts establish that the moving party is entitled to immunity granted by law. [*Allen v Bloomfield Hills Sch Dist*, 281 Mich App 49, 52; 760 NW2d 811 (2008) (citations omitted).]

## B. ANALYSIS

Except as otherwise provided, the GTLA broadly shields and grants to governmental agencies immunity from tort liability when an agency is engaged in the exercise or discharge of a governmental function. MCL 691.1407(1); *Duffy v Dep't of Natural Resources*, 490 Mich 198, 204; 805 NW2d 399 (2011). Therefore, a governmental agency can be held liable under the GTLA only if a case falls into one of the enumerated statutory exceptions. *Grimes v Mich Dep't of Transp*, 475 Mich 72, 77; 715 NW2d 275 (2006). One of these is the motor-vehicle exception. MCL 691.1405 provides in pertinent part:

> Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner[.]

To establish a case of negligence, the plaintiff must prove: (1) that the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the breach of duty was a proximate cause of the plaintiff's damages; and (4) that the plaintiff suffered damages. *Frohman v Detroit*, 181 Mich App 400, 411; 450 NW2d 59 (1989). Additionally, in Michigan, "the rule is that evidence of violation of a penal statute creates a rebuttable presumption of negligence." *Klanseck v Anderson Sales & Serv, Inc*, 426 Mich 78, 86; 393 NW2d 356 (1986). With respect to Kofahl's actions, MCL 257.627 and MCL 257.628(9) proscribe operating a motor vehicle at speeds faster than the established limit.

The City contends that it is immune from liability under the GTLA because Kofahl was not negligent in the operation of the police vehicle as she was excused from compliance with the speed limit by MCL 257.603 and MCL 257.632. However, at the time of the crash, it is

undisputed that Kofahl was not in compliance with either statute. MCL 257.603 provides in relevant part:

(2) The driver of an authorized emergency vehicle *when responding to an emergency call, but not while returning from an emergency call,* or when pursuing or apprehending a person who has violated or is violating the law or is charged with or suspected of violating the law *may exercise the privileges set forth in this section, subject to the conditions of this section.*

(3) The driver of an authorized emergency vehicle may do any of the following:

\* \* \*

(c) Exceed the prima facie speed limits *so long as he or she does not endanger life or property*.

\* \* \*

(4) The exemptions granted in this section to an authorized emergency vehicle apply *only when the driver of the vehicle while in motion sounds an audible signal* by bell, siren, air horn, or exhaust whistle as may be reasonably necessary, except as provided in subsection (5), *and when the vehicle is equipped with at least 1 lighted lamp displaying a flashing, oscillating, or rotating red or blue light* visible under normal atmospheric conditions from a distance of 500 feet in a 360 degree arc unless it is not advisable to equip a police vehicle operating as an authorized emergency vehicle with a flashing, oscillating or rotating light visible in a 360 degree arc.

(5) A police vehicle shall retain the exemptions granted in this section to an authorized emergency vehicle without sounding an audible signal if the police vehicle is engaged in an emergency run in which silence is required. [Emphasis added.] [1]

Furthermore, under MCL 257.632:

The speed limitation set forth in this chapter *shall not apply to vehicles when operated with due regard for safety under the direction of the police when traveling in emergencies or in the chase or apprehension of violators of the law or of persons charged with or suspected of a violation,* nor to fire department or fire patrol vehicles when traveling in response to a fire alarm, nor to public or private ambulances when traveling in emergencies. *This exemption shall apply*

---

[1] In this case, it is undisputed that, because of the nature of the emergency call, Kofahl was excused from sounding her siren.

*only when the driver of the vehicle while in motion sounds an audible signal* by bell, siren or exhaust whistle as may be reasonably necessary *or when the vehicle is equipped with at least 1 lighted lamp displaying a flashing, oscillating or rotating red or blue light visible under normal atmospheric conditions from a distance of 500 feet to the front of such vehicles*, unless the nature of the mission requires that a law enforcement officer travel without giving warning to suspected law violators. This exemption shall not however protect the driver of the vehicle from the consequences of a reckless disregard of the safety of others. [Emphasis added.]

Thus, both MCL 257.632 and MCL 257.603 would have permitted Kofahl to disregard the speed limit under certain circumstances, but at the time of the crash, those circumstances did not exist. Kofahl was no longer responding to an emergency as she had been notified that it was a false alarm, and, in any event, she did not have her emergency lights activated when she crashed into Collins's vehicle. Thus, given her speed at the time of the crash, there is a rebuttable presumption of negligence. *Klanseck*, 426 Mich at 86. Moreover, even without the presumption, viewing the facts in the light most favorable to Collins, a reasonable jury could conclude that the decision to proceed through the intersection while travelling 57 miles per hour[2] in a 30 mile per hour zone during rush hour traffic[3] without any emergency lights or sirens was a violation of the general duty of care a driver owes other motorists. See *DePriest v Kooiman*, 379 Mich 44, 46; 149 NW2d 449 (1967) (stating that a driver has a duty to exercise due care in the operation of his vehicle and make reasonable allowances for traffic, weather, and road conditions).

On appeal, the City contends that Collins was negligent because he failed to yield the right of way to Kofahl. However, there is a fact question as to whether Kofahl had the right of way. Again, the record reflects that Kofahl approached an intersection while travelling at an excessive rate of speed without her lights or sirens activated. Thus, although the light was green, she did not have the legal right-of-way because she was travelling at an unlawful speed. See MCL 257.649(7) ("The driver of a vehicle traveling at an unlawful speed forfeits a right of way that the driver might otherwise have under this section."). Nevertheless, the City seeks to excuse Kofahl's actions by pointing out that when Kofahl's lights were activated, Collins should have seen them and yielded the right away notwithstanding the fact that Kofahl turned off her lights before crashing into his vehicle. See MCL 257.650(1) ("The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to a vehicle approaching from the opposite direction which is within the intersection or so close to the intersection as to

---

[2] Although there is conflicting evidence as to Kofahl's exact speed at the moment of impact, at least some of the evidence on the record supports a finding that she was travelling at 57 miles per hour when she entered the intersection and crashed into Collins's vehicle. Likewise, to the extent that the record reflects that the speed limit was 35 miles per hour instead of 30 miles per hour, we must view the facts in the light most favorable to Collins.

[3] We acknowledge that there was also testimony that the traffic was light at the time of the crash. However, resolution of such factual disputes is not proper on summary disposition.

-4-

constitute an immediate hazard . . . ."). However, Collins testimony was that he did not see Kofahl's vehicle before he began his turn. Therefore, although there is also evidence suggesting that Collins either did or should have seen Kofahl's vehicle and yielded to her, resolution of factual disputes is not proper on a motion for summary disposition.

Next, the City contends that Kofahl's decision to turn off her emergency lights was not part of the operation of the vehicle, so the motor-vehicle exception does not apply. We disagree. "]T]he 'operation of a motor vehicle' encompasses activities that are directly associated with the driving of a motor vehicle." *Chandler v Muskegon Co*, 467 Mich 315, 321; 652 NW2d 224 (2002). Moreover, unlike the decision to pursue a fleeing vehicle, which is made independently of the actual operation of a motor vehicle, *Robinson v City of Detroit*, 462 Mich 439, 457; 613 NW2d 307 (2000), Kofahl's actions in this case were taken in connection with her operation of her motor vehicle. By way of comparison, we note that there is no meaningful distinction between a driver's decision to operate his or her vehicle with or without headlights and a decision to operate the vehicle with or without emergency lights. In both cases, the decision to operate the motor vehicle with or without the respective types of lights is subsumed into the broader operation of the entire motor vehicle. Consequently, when determining whether Kofahl was negligent, it is appropriate to consider Kofahl's decision to deactivate her emergency lights while speeding toward an intersection in heavy traffic and her decision to operate her vehicle at an excessive rate of speed while approaching an intersection without using her emergency lights.[4]

Because there are factual questions on whether Kofahl was negligent in the operation of the police vehicle, the trial court did not err by denying the City summary disposition under MCR 2.116(C)(7).

Defendants next argue that Kofahl is entitled to immunity pursuant to the gross negligence exception for individual governmental employees or officers. MCL 691.1407(2) provides in relevant part:

> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer,

---

[4] We note, briefly, that in the proceedings before the trial court, the parties relied on internal police policies to ascertain whether Kofahl was negligent in her operation of the police vehicle. Reliance on such policies, however, is improper as it would encourage the abandonment of policies in place for the protection of others. See, generally, *Buczkowski v McKay*, 441 Mich 96, 99 n 1; 490 NW2d 330 (1992) ("Imposition of a legal duty on a retailer on the basis of its internal policies is actually contrary to public policy. Such a rule would encourage retailers to abandon all policies enacted for the protection of others in an effort to avoid future liability.").

employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

MCL 691.1407(8)(a) defines gross negligence as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Through this language, the Legislature intended to limit employee liability to only "situations where the contested conduct was substantially more than negligent." *Maiden v Rozwood*, 461 Mich 109, 122; 597 NW2d 817 (1999). This Court has stated that gross negligence involves:

almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge. [*Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004).]

Whether a government employee's conduct constitutes gross negligence under MCL 691.1407 is generally a question of fact. *Id*. at 88. But a court may grant summary disposition under MCR 2.116(C)(7) if "no reasonable person could find that a governmental employee's conduct was grossly negligent." *Id*.

In this case, it is undisputed that Kofahl was acting within the scope of her authority while in the exercise or discharge of a governmental function. Further, a reasonable jury could conclude that her actions—entering an intersection at rush hour without any lights or sirens while travelling almost twice the posted speed limit—demonstrates an "almost willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks." *Id*. at 90.

Kofahl next argues that she was not "the" proximate cause of Collins's injuries. In 2017, the Michigan Supreme Court announced a new framework for determining whether an individual's conduct is "the proximate cause" of an injury for purposes of determining governmental immunity under MCL 691.1407(2)(c). See *Ray v Swager (On Remand)*, 321 Mich App 755, 758; 909 NW2d 917 (2017) (*Ray II*), citing *Ray v Swager*, 501 Mich 52; 903 NW2d 366 (2017) (*Ray I*). As this Court explained on remand,

The analysis under this framework begins with determining whether the defendant's gross negligence was a cause in fact of the plaintiff's injuries. Provided that a defendant's gross negligence was a factual cause, the court must then consider whether the defendant was a proximate—i.e. legal—cause by

-6-

addressing foreseeability and whether the defendant may be held legally responsible for his or her conduct. In addition to considering the governmental actor's conduct, it must also be decided whether there are other proximate causes of the injury. . . .

Once the various proximate causes have been determined, the question then becomes whether taking all possible proximate causes into account, the government actor's gross negligence was *the* proximate cause of injury. This requires considering defendant's actions alongside any potential proximate causes to determine whether defendant's actions were, or could have been, the one most immediate, efficient, and direct cause of the injuries. The relevant inquiry is not whether the defendant's conduct was the immediate factual cause of injury, but whether, weighing the legal responsibilities of the actors involved, the government actor could be considered the proximate cause. [*Ray II*, 321 Mich App at 759-760 (quotation marks and citations omitted).]

"Under the GTLA, a proper proximate cause analysis must assess foreseeability and the legal responsibility of the relevant actors to determine whether the conduct of a government actor, or some other person, was 'the proximate cause,' that is, as our caselaw has described it, "the one most immediate, efficient, and direct cause" of the plaintiff's injuries." *Ray I*, 501 Mich at 59.

*Ray I* and *Ray II* concerned a 13-year-old student athlete struck and injured by an automobile while he practiced running with his cross-country team. *Ray II*, 321 Mich App at 758-759. Although eyewitness accounts varied, there was evidence that the plaintiff's coach urged him into the road despite a "red hand" on the pedestrian traffic signal. *Id*. at 759. The coach asserted governmental immunity, claiming that he was not *the* proximate cause of the injury because the student's own action of running into the road and the fact the automobile struck him were more immediate and direct causes of his injury. *Id*. This Court initially agreed, but our Supreme Court used the opportunity, as discussed above, to sharpen the legal distinction between cause-in-fact and proximate cause. *Id*. On remand, this Court concluded that there were "myriad variables affecting the actors' respective negligence and legal responsibility" that prevented any assessment or weighing of the individual actors' competing legal responsibilities. *Id*. at 762. Because the coach's actions could have been *the* proximate cause, this Court held that summary disposition on the basis of governmental immunity was inappropriate. *Id*.

Kofahl argues that her "decision to deactivate her lights immediately prior to impact cannot be the proximate cause of the crash" because Collins cannot establish whether, had Kofahl left her emergency lights on, the crash could have been avoided. Kofahl also argues that if Collins "had not entered the intersection to make his left turn, the crash would not have occurred." However, the proximate cause of the crash was not Kofahl's decision to turn off her emergency lights alone, but the fact that she was traveling at nearly twice the legal speed limit through a heavily-trafficked downtown district when she did so. Moreover, Kofahl's argument that the crash would not have occurred absent Collins's decision to turn left is exactly the type of "but-for" cause-in-fact style reasoning that our Supreme Court disavowed in *Ray I*. See *Ray I*, 500 Mich at 73 (noting that this Court erred by confusing cause-in-fact with proximate causation).

As in *Ray II*, there are diverging factual issues that might affect the determination of which proximate cause out of several competing options constitutes "the one most immediate, efficient, and direct cause" of Collins's injuries. Accordingly, the trial court correctly held that Kofahl cannot defeat Collins's claims on governmental immunity grounds. The factfinder at trial must determine whether Kofahl's conduct was "the one most immediate, efficient, and direct cause of the plaintiff's injury." See *id*.

## III. CONCLUSION

The trial court correctly held that a reasonable factfinder could conclude that Kofahl's speeding constituted the negligent operation of the vehicle and Kofahl's conduct in going nearly twice the speed limit in downtown Ypsilanti could reasonably constitute gross negligence that was "the one most immediate, efficient, and direct cause of the plaintiff's injury." Accordingly, the trial court did not err in denying defendants' motion for summary disposition on the basis of governmental immunity.

Affirmed.

/s/ Michael J. Kelly
/s/ Deborah A. Servitto