*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF JAMES THOMAS BUSH, by
CHRISTINA REFFLE and THOMAS BUSH,
Co-Personal Representatives,

UNPUBLISHED
May 7, 2019

      Plaintiffs-Appellees/Cross-
      Appellants,

v

No. 340667
Macomb Circuit Court
LC No. 2016-000287-NI

CITY OF ST. CLAIR SHORES, ST. CLAIR
SHORES POLICE DEPARTMENT, and
THOMAS MURPHY,

      Defendants-Appellants/Cross-
      Appellees.

Before: O'BRIEN, P.J., and JANSEN and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiffs, as co-personal representatives of the estate of James Thomas Bush (the "decedent"), brought this wrongful death action against defendants, the city of St. Clair Shores, the St. Clair Shores Police Department, and St. Clair Shores Police Officer Thomas Murphy. Defendants appeal as of right the trial court's order denying their motion for summary disposition under MCR 2.116(C)(7) (governmental immunity) and (10) (no genuine issue of material fact). Plaintiffs have filed a cross-appeal, challenging the trial court's denial of their own motion for partial summary disposition, as well as the trial court's decision to allow defendants to introduce a toxicology report of an analysis of the decedent's blood and urine, which showed that the decedent had THC, the active ingredient of marijuana, in his system at the time of the events giving rise to this action. We affirm.

## I. RELEVANT FACTUAL BACKGROUND

This action arises out of a vehicular accident on July 22, 2015, when St. Clair Shores Police Officer Thomas Murphy made a left-hand turn in front of the decedent, who was operating a motorcycle and approaching from the opposite direction. The accident occurred at

9:34 p.m. on Eight Mile Road, near the border between St. Clair Shores and Harper Woods. Murphy was on road patrol, driving a Chevrolet Tahoe on east-bound Eight Mile Road near the I-94 freeway. At this location, Eight Mile Road is a two-lane road with a speed limit of 35 miles an hour. Murphy observed a minivan driving west on Eight Mile Road without its headlights on. He first attempted to alert the driver of the minivan, but when that had no effect, he made a U-turn to travel west on Eight Mile Road to make a traffic stop. Before he made the U-turn, he allowed a car that was behind the minivan to pass. After completing the U-turn, he caught up to the two vehicles as the minivan began to make a left-hand turn from Eight Mile Road into a residential driveway. As Murphy prepared to also turn into the driveway, he crossed into the oncoming lane of traffic. He activated his lights after he began his left-hand turn. As he did so, the decedent, who was riding a motorcycle, slid his motorcycle into the front right side of Murphy's police vehicle. The decedent attempted to avoid the collision, but was unable to do so. The decedent was taken to a hospital, but died from injuries received in the collision. A post-mortem analysis of the decedent's blood and urine indicated the presence of 16 ng/mL of Delta-9 THC, the active ingredient of marijuana. However, defendants' experts were unable to provide an opinion whether the decedent's marijuana use impaired his operation of the motorcycle at the time of the accident. Defendants also offered expert witnesses who concluded that the decedent was exceeding the speed limit at the time of the accident, but plaintiffs offered expert testimony refuting defendants' experts' calculations and speed estimates, including whether speed was a factor in the accident.

Defendants moved for summary disposition, arguing that there was no evidence that Murphy was negligent or grossly negligent, and thus they were entitled to governmental immunity. Defendants also argued that even if a jury could find that Murphy was negligent or grossly negligent, plaintiffs could not establish that Murphy's conduct was "the proximate cause" of the decedent's death, particularly in light of the decedent's marijuana use and excessive speed. Defendants further argued that the decedent was 50% or more at fault, precluding plaintiffs from recovering any damages. Plaintiffs filed their own motion for summary disposition on the issue of Murphy's gross negligence. The trial court denied both motions, finding that genuine issues of material fact precluded summary disposition for any party.

Plaintiffs also filed a motion to exclude the evidence of the toxicology analysis of the decedent's blood and urine. Plaintiffs argued that the toxicology results were not relevant because defendants' experts were unable to provide an opinion whether the decedent was actually impaired at the time of the accident. The trial court initially agreed and ruled that the toxicology report would be excluded, but on defendants' motion for reconsideration, the trial court reversed its decision and ruled that the report could be admitted.

## I. SUMMARY DISPOSITION

On appeal, we first consider whether the trial court erred by denying the parties' respective motions for summary disposition. As relevant to this appeal, the parties sought summary disposition under MCR 2.116(C)(7) and (10). In *Allen v Bloomfield Hills Sch Dist*, 281 Mich App 49, 52; 760 NW2d 811 (2008), this Court stated:

This Court reviews de novo a trial court's decision on a motion for summary disposition. MCR 2.116(C)(7) permits summary disposition of a claim that is barred by immunity granted by law. In reviewing a motion under MCR 2.116(C)(7), a court is required to consider not only the pleadings, but also any affidavits, depositions, admissions, or other documentary evidence filed or submitted by the parties. The contents of the complaint must be accepted as true unless contradicted by the documentary evidence, which must in turn be considered in a light most favorable to the nonmoving party. The trial court properly grants a motion for summary disposition under MCR 2.116(C)(7) when the undisputed facts establish that the moving party is entitled to immunity granted by law. [Citations omitted.]

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). This Court reviews a "motion brought under MCR 2.116(C)(10) by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "Summary disposition under MCR 2.1 16(C)(10) is appropriately granted if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Greene v AP Prod, Ltd*, 475 Mich 502, 507; 717 NW2d 855 (2006). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds could differ." *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013).

Except as otherwise provided, the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, broadly shields and grants to governmental agencies immunity from tort liability when an agency is engaged in the exercise or discharge of a governmental function. MCL 691.1407(1); *Duffy v Dep't of Natural Resources*, 490 Mich 198, 204; 805 NW2d 399 (2011); *Grimes v Dep't of Transp*, 475 Mich 72, 76-77; 715 NW2d 275 (2006). Therefore, a governmental agency can be held liable under the GTLA only if a case falls into one of the enumerated statutory exceptions. *Grimes*, 475 Mich at 77. One of these is the automobile exception. MCL 691.1405 provides, in pertinent part:

> Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner[.]

To establish a case of negligence, the plaintiff must prove: (1) that the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the breach of duty was a proximate cause of the plaintiff's damages; and (4) that the plaintiff suffered damages. *Frohman v Detroit*, 181 Mich App 400, 411; 450 NW2d 59 (1989).

With respect to Murphy, MCL 691.1407(2) provides immunity for government employees as follows:

> Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and

employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

MCL 691.1407(8)(a) defines gross negligence as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Through this language, the Legislature intended to limit employee liability to only "situations where the contested conduct was substantially more than negligent." *Maiden v Rozwood*, 461 Mich 109, 122; 597 NW2d 817 (1999). This Court has stated that gross negligence involves

almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge. [*Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004).]

Whether a government employee's conduct constitutes gross negligence under MCL 691.1407 is generally a question of fact. *Id*. at 88. But a court may grant summary disposition under MCR 2.116(C)(7) if "no reasonable person could find that a governmental employee's conduct was grossly negligent." *Id*.

In this case, the parties dispute whether Murphy's conduct was negligent or grossly negligent. In analyzing these issues, the trial court considered a number of traffic regulations and observed that, "[i]n Michigan . . . the rule is that evidence of violation of a penal statute creates a rebuttable presumption of negligence." *Klanseck v Anderson Sales & Serv, Inc*, 426 Mich 78, 86; 393 NW2d 356 (1986). With respect to the decedent's actions, the trial court noted that both MCL 257.627 and MCL 257.628(9) proscribe operating a motor vehicle at speeds faster than the established limit. The trial court also noted that pursuant to MCL 257.649(5), "[t]he driver of a vehicle traveling at an unlawful speed shall forfeit a right of way which the driver might otherwise have." With respect to Murphy's actions, the trial court referred to MCL 257.650(1), which establishes rules for the right of way when turning left at an intersection.

More directly relevant, MCL 257.648(1) provides that "[t]he operator of a vehicle or bicycle upon a highway, before stopping or turning from a direct line, shall first determine that the stopping or turning can be made in safety and shall give a signal as required in this section."[1]

In reviewing the motions for summary disposition, the trial court viewed a video recording of the accident, as recorded by a dash-board camera ("dash-cam") from Murphy's police vehicle. The trial court found that the dash-cam video, together with other evidence submitted by the parties, established a question of fact whether Murphy was negligent or grossly negligent. We agree.

The dash-cam video shows that Murphy slowed behind the car following the minivan. As the minivan started its turn, the car behind it started to accelerate and Murphy immediately began to move into the oncoming, east-bound lane. Murphy did not make a "clean" turn, but proceeded partly into the oncoming lane as he approached the driveway before turning. The minivan was not even through the oncoming lane into the driveway at this time. Once the uninvolved car moved out of the way, the decedent's motorcycle can be seen. From what is depicted in the video, Murphy may not have seen the oncoming motorcycle, but not because its headlights blurred into those behind it, but because he could not see beyond the car in front of him to even check whether the oncoming lane was clear before he began to make his turn. Despite what some of the still photographs appear to depict, it appears in real time that Murphy had no clear line of sight when he began to make his turn. This evidence supports the trial court's determination that the dash-cam video establishes a question of fact regarding whether Murphy was negligent or grossly negligent when he turned into the lane of oncoming traffic without ascertaining that it was safe to do so.

Other aspects of the video also support the trial court's decision. The sky was not altogether dark, but the streetlights were on and a slight glare can be seen. Murphy also did not activate his emergency lights until after he was already into his turn, leaving oncoming traffic no time to see them and proceed with caution. In addition, at the time Murphy began his turn, he could not have known whether there would be room to pull into the driveway behind the minivan. If the minivan had stopped at the end of the driveway, Murphy's vehicle would have had to stop sideways in the oncoming lane, leaving him exposed to any oncoming cars that might not have enough time to see him and stop. There is no apparent reason that Murphy could not have simply stopped in the west-bound lane and waited. The driver of the minivan was not

---

[1] We note that a driver also owes a general duty of care to other motorists and pedestrians to exercise ordinary and reasonable care and caution in the operation of his car and make reasonable allowances for traffic, weather, and road conditions. *DePriest v Kooiman*, 379 Mich 44, 46; 149 NW2d 449 (1967); *Zarzecki v Hatch*, 347 Mich 138, 141; 79 NW2d 605 (1956). In addition, police officers pursuing a suspect owe a duty of care to innocent third persons. *Robinson v Detroit*, 462 Mich 439, 450-451; 613 NW2d 307 (2000). Although the pursuit here did not involve a high-speed chase, Murphy acknowledged that he was pursuing the driver of the minivan when he made his turn into traffic.

attempting to evade Murphy, and the minivan was pulling into a driveway, rather than a side street.

In his deposition, Murphy testified that he could not tell whether the camera angle was better or worse than his own field of vision at the time he made the turn. He stated that he did see a set of lights in the distance, and acknowledged that one of the headlights belonged to the decedent, but he could not tell from the video whether they were approaching. He maintained that he thought he had enough room to safely make the turn. He further testified that he could see the motorcycle approach in the video, but stated that he never saw the motorcycle at the time of the accident.

Defendants note that, according to the still photographs, "the single headlight of the motorcycle does not become independent of the headlights of following vehicles until frame 170, when the entire width of Murphy's SUV is already in the lane of the approaching traffic." Even if this is true, it does not preclude a finding that Murphy acted negligently, or was even grossly negligent. A reasonable jury could find that, if the glare of the oncoming traffic rendered it difficult or impossible to see whether any of the vehicles were close enough to pose a danger, Murphy reasonably should have stopped and waited until he was sure that all oncoming traffic had passed before turning, and find that his failure to do so constituted negligence, and possibly even gross negligence. The evidence established a question of fact whether Murphy began his left-hand turn either without properly checking for oncoming vehicles, or without being able to clearly ascertain if the pathway was clear. A jury could find that either scenario, along with Murphy's failure to activate his emergency lights until he had begun his turn and was in the pathway of oncoming vehicles, demonstrated a substantial lack of concern for whether an injury would result, thereby supporting a finding of gross negligence.

We reject defendants' argument that Murphy's failure to activate his lights before he began his turn is immaterial to the question of gross negligence because he was not acting in a high-speed chase or an emergency situation. Under MCL 257.603, the driver of an emergency vehicle, including a police vehicle, may "disregard regulations governing direction of movement or turning in a specified direction" for the purpose of "pursuing or apprehending a person . . . suspected of violating the law," but only if the driver "sounds an audible signal by bell, siren, air horn, or exhaust whistle as may be reasonably necessary," unless the driver of a police vehicle "is engaged in an emergency run in which silence is required." Although Murphy was not engaged in an emergency run, he admittedly was pursuing a person suspected of violating the law.

Moreover, defendants conflate the premise that Murphy may not have been required to activate his lights with their contention that his decision not to do so sooner could not be taken into account when deciding whether, as a whole, his actions could be considered negligent or grossly negligent. Given the evidence that Murphy decided to activate his lights during the turn, a jury could find that he recognized the significance of doing so in order to alert oncoming cars to his presence, and that, having failed to activate the lights before he began making his turn, he should have waited to turn until any oncoming vehicles had a chance to see him and react to his presence. In any event, the fact that Murphy used his lights *during the turn* does not provide him with a special defense for moving partly into the oncoming lane or turning in front of the decedent before the lights were activated. See *Flanagin v Kalkaska Co Rd Comm*, 319 Mich

App 633, 638; 904 NW2d 427 (2017) (recognizing that police and emergency vehicles may be excused from following the "rules of the road," but they are still required to ascertain that it is safe to do so).

Defendants alternatively argue that plaintiffs failed to establish a question of fact concerning proximate causation. As noted earlier, under MCL 691.1407(2), a government employee's gross negligence does not give rise to liability unless the negligence is "the proximate cause" of the plaintiff's injuries. In the context of MCL 691.1405, our Supreme Court has equated this element with proof that the accident "resulted from" the negligent operation of a motor vehicle by the government employee. *Robinson v Detroit*, 462 Mich 439, 445; 613 NW2d 307 (2000). This Court has equated *Robinson*'s analysis as creating a requirement that the automobile exception requires that the government vehicle be physically involved in the collision, which occurred here. *Curtis v City of Flint*, 253 Mich App 555, 561; 655 NW2d 791 (2002). Defendants also argue that even if Murphy acted negligently, pursuant to statute, plaintiffs cannot recover any damages because the decedent was 50% or more at fault for the accident.

Causation in a negligence action requires proof of both cause in fact and proximate cause. *Reeves v Kmart Corp*, 229 Mich App 466, 479; 582 NW2d 841 (1998). "Proximate cause is an essential element of a negligence claim." *Ray v Swager*, 501 Mich 52, 63; 903 NW2d 366 (2017). Proximate cause requires an examination of the foreseeability of consequences, and whether a defendant is legally responsible for those consequences. *Id*. Proximate cause should not be confused with cause in fact, or factual causation, which means that a plaintiff's injury would not have occurred "but for" the actions of a defendant. *Id*. A court must determine that a defendant's negligence was a cause in fact of a plaintiff's injuries before it can conclude that it was the proximate or legal cause of the injuries. *Id*. at 64. "In a negligence action, a plaintiff must establish both factual causation, i.e., 'the defendant's conduct in fact caused harm to the plaintiff,' and legal causation, i.e., the harm caused to the plaintiff 'was the general kind of harm the defendant negligently risked.' " *Id*. (quotations omitted). When a motion for summary disposition challenges causation, "the court's task is to review the record evidence, and all reasonable inferences therefrom, and decide whether a genuine issue of any material fact exists to warrant a trial." *Skinner v Square D Co*, 445 Mich 153, 161, 516 NW2d 475 (1994).

These general causation principles also apply when deciding whether Murphy's gross negligence could be found to be "the" proximate cause of the decedent's injuries within the meaning of MCL 691.1407(2)(c). That determination hinges on "whether it was foreseeable that the defendant's conduct could result in the harm to the victim." *Ray*, 501 Mich at 65; see also *id*. at 74. As explained by this Court, to determine whether a government employee's conduct can be considered "the" proximate cause of an injury, a court should engage in the following analysis:

> In addition to considering the governmental actor's conduct, it must also be decided whether there are other proximate causes of the injury. [*Ray*, 501 Mich] at 74-76. Determining if there were other proximate causes requires consideration of whether any other human actor was negligent because "only a human actor's breach of a duty can be a proximate cause." *Id*. at 72. "Nonhuman and natural forces" may bear on the question of foreseeability and intervening causes for

purposes of analyzing proximate cause, but they can never be considered the proximate cause of a plaintiff's injuries for purposes of the GTLA. *Id.*

Once the various proximate causes have been determined, the question then becomes whether, taking all possible proximate causes into account, the government actor's gross negligence was the proximate cause of injury. *Id.* at 83. This requires "considering defendant's actions alongside any other potential proximate causes to determine whether defendant's actions were, or could have been, 'the one most immediate, efficient, and direct cause' of the injuries." *Id.* at 76. The relevant inquiry is not whether the defendant's conduct was the immediate factual cause of injury, but whether, weighing the legal responsibilities of the actors involved, the government actor could be considered "the proximate cause." *Id.* at 71-72. [*Ray v Swager (After Remand)*, 321 Mich App 755, 760; 909 NW2d 917, 920 (2017).]

Applying this standard, we conclude that there are material questions of fact regarding the respective negligence of Murphy and the decedent, which in turn affect their competing legal responsibilities, as well as a determination of the proximate cause of the decedent's death. Therefore, the trial court properly denied defendants' motion for summary disposition on the issue of proximate cause.

One of defendants' principal arguments is that it was not foreseeable that Murphy's actions would be harmful to the decedent because Murphy could not have seen the decedent as Murphy made his turn. This argument presupposes that Murphy did not act negligently, or breach any duty of due care, during his turn. To prevail under this argument, defendants would need to show that there is no genuine issue of fact that Murphy properly checked for any oncoming traffic before beginning his turn, and was not capable of seeing the decedent approach. However, a jury could conclude from the video, as the trial court did, that Murphy began entering oncoming traffic and turning before he was able to clearly see whether anyone was approaching. If a jury found that Murphy breached his duty of care by beginning his turn without adequate warning and without properly ascertaining that it was safe to do so, the foreseeability question becomes whether someone who improperly turns left into oncoming traffic could reasonably foresee that such conduct could result in harm to another person. The likelihood of a collision under such circumstances is indeed foreseeable. The factual questions about Murphy's conduct preclude a court from determining that Murphy could not be the proximate cause of the accident as a matter of law.

Defendants also argue that, even if Murphy acted negligently, he was not the proximate cause of the accident because of the decedent's speeding and marijuana use. Similarly, defendants argue that plaintiffs cannot recover because the decedent was more than 50% at fault for the accident. Defendants rely on MCL 500.3135(2)(b) and MCL 600.2955a in support of the latter argument. MCL 500.3135(2)(b) provides that, for noneconomic loss damages in an automobile accident, "damages shall be assessed on the basis of comparative fault, except that damages shall not be assessed in favor of a party who is more than 50% at fault." More generally, MCL 600.2955a provides:

(1) It is an absolute defense in an action for the death of an individual or for injury to a person or property that the individual upon whose death or injury the action is based had an impaired ability to function due to the influence of intoxicating liquor or a controlled substance, and as a result of that impaired ability, the individual was 50% or more the cause of the accident or event that resulted in the death or injury. If the individual described in this subsection was less than 50% the cause of the accident or event, an award of damages shall be reduced by that percentage.

(2) As used in this section:

(a) "Controlled substance" means that term as defined in section 7104 of the public health code, Act No. 368 of the Public Acts of 1978, being section 333.7104 of the Michigan Compiled Laws.

(b) "Impaired ability to function due to the influence of intoxicating liquor or a controlled substance" means that, as a result of an individual drinking, ingesting, smoking, or otherwise consuming intoxicating liquor or a controlled substance, the individual's senses are impaired to the point that the ability to react is diminished from what it would be had the individual not consumed liquor or a controlled substance. An individual is presumed under this section to have an impaired ability to function due to the influence of intoxicating liquor or a controlled substance if, under a standard prescribed by section 625a of the Michigan vehicle code, Act No. 300 of the Public Acts of 1949, being section 257.625a of the Michigan Compiled Laws, a presumption would arise that the individual's ability to operate a vehicle was impaired.

We conclude that there are genuine issues of fact regarding whether the decedent's speed or marijuana use were a contributing factor to the accident, and if so, the extent to which they contributed to the decedent's comparative fault.

Although evidence of violation of a penal statute creates a rebuttable presumption of negligence, *Klanseck*, 426 Mich at 86, the decedent's intoxication or speeding would not itself relieve Murphy of liability for his negligence on the ground that the collision was not foreseeable or that the decedent's actions were a superseding cause as a matter of law.

Where an act of negligence is a substantial factor in bringing about an injury, it does not cease to be a legal and proximate cause thereof because of the intervention of a subsequent act of negligence of another which contributed to the injury, if the prior act of negligence is still operating, and the injury inflicted is not different in kind from that which would have resulted from the prior act. [*Comstock v Gen Motors Corp*, 358 Mich 163, 178; 99 NW2d 627, 635 (1959) (quotation omitted).]

Murphy's acts or omissions in relation to turning before he could see around the car in front of him, or in misjudging the distance between himself and the decedent, was clearly operative up to the point of impact in this accident. The collision that resulted is the kind of injury that such

actions produce. Thus, defendants' arguments depend on whether the decedent was grossly negligent, which would act as a superseding cause to break the chain of causation. *People v Schaefer*, 473 Mich 418, 437-438, 703 NW2d 774 (2005), overruled in part on other grounds in *People v Derror*, 475 Mich 316, 334; 715 NW2d 822 (2006).

Contrary to defendants' argument, the decedent's marijuana use alone does not automatically constitute a superseding cause. *People v Bergman*, 312 Mich App 471; 879 NW2d 278 (2015). With respect to whether the decedent's speed, combined with the marijuana use, could act as a superseding cause, questions of fact remain that preclude summary disposition.[2] As the trial court noted, there was conflicting expert testimony concerning both the effect of the decedent's marijuana use on his driving ability and how fast he was going at the time of the accident. Given the conflicting evidence regarding whether the decedent's speed or presence of marijuana in his system contributed to the accident, the trial court properly declined to rule that Murphy could not be the proximate cause of the accident, or that the decedent was 50% or more at fault. Defendants' reliance on the fact that other cars stopped whereas the decedent did not does not compel a conclusion that the decedent was grossly negligent or speeding excessively. We reject this argument because there is no evidence that the decedent's motorcycle was similarly situated to any other vehicles at the time Murphy began his turn and entered the roadway.

For these reasons, the trial court did not err by denying defendants' motion for summary disposition.

Although plaintiffs argue on cross-appeal that the trial court erred by denying their own motion for summary disposition on the issues of Murphy's gross negligence and the absence of any fault by the decedent, we conclude that the trial court also properly denied plaintiff's motion in light of the disputed factual issues discussed earlier.

## II. ADMISSIBILITY OF THE TOXICOLOGY RESULTS

On cross-appeal, plaintiffs argue that the trial court erred by ruling that the decedent's toxicology results were admissible because they were relevant to the issue of the decedent's comparative fault. They further argue that, even if relevant, the evidence should have been excluded under MRE 403. We disagree with both arguments. As our Supreme Court stated in *Waknin v Chamberlain*, 467 Mich 329, 332; 653 NW2d 176 (2002):

> We review for an abuse of discretion a trial court's decision whether to admit evidence. To the extent that this inquiry requires examination of the meaning of the Michigan Rules of Evidence, we address such a question in the same manner as the examination of the meaning of a court rule or a statute, which are questions of law that we review de novo. [Citations omitted.]

---

[2] These questions of fact also preclude deciding that the decedent was 50% or more at fault for the accident.

An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

Plaintiffs contend that because none of defendants' expert witnesses were able to offer an opinion as to whether the marijuana in the decedent's system actually affected his ability to drive, the toxicology results should have been excluded as irrelevant. We disagree. "Generally, all relevant evidence is admissible at trial." *People v Aldrich*, 246 Mich App 101, 114; 631 NW2d 67 (2001). Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.

We agree with defendants that the fact that the decedent's blood tested positive for THC is relevant to the question of negligence which, as noted earlier, must be considered to determine whether the decedent could be an additional proximate cause of the accident, possibly relieving Murphy or the city of liability. To this end, MCL 257.625(8) prohibits a person operating a motor vehicle with "any amount" of a schedule 1 controlled substance in his body. This creates a presumption of negligence on the decedent's part. *Klanseck*, 426 Mich at 86. In addition, plaintiffs' emphasis on the inability of defendants' experts to state with certainty that the decedent's marijuana use impaired his ability to drive reflects an overly narrow view of relevance. Moreover, it conflates intoxication with actual impairment. To avoid liability pursuant to MCL 600.2955a(1), defendants must show both that the decedent was under the influence of intoxicating liquor or a controlled substance, and that the substance impaired the decedent's ability to function such that the decedent was 50% or more the cause of the accident. When deciding questions of fact, a jury is permitted to consider all the evidence and make inferences from testimony presented. *Jenkins v Raleigh Trucking Servs, Inc*, 187 Mich App 424, 427; 468 NW2d 64, 66 (1991). Even though defendants' experts were unable to offer an opinion regarding whether the decedent was actually impaired at the time of the accident, their testimony about how marijuana affects brain chemistry would provide the jury with a basis for determining that the decedent's brain chemistry could have been affected if he was under the influence of marijuana. The toxicology results were probative of whether the decedent was under the influence of marijuana, even if the results, standing alone, could not establish the extent, if any, of the decedent's impairment. It would be up to the jury to determine from this evidence, along with other testimony and evidence of the decedent's conduct and reaction to the events, including the jury's own observations of the situation encountered by the decedent as depicted in the dash-cam video, whether the decedent's use of marijuana impaired his senses "to the point that [his] ability to react [was] diminished from what it would [have been] had [he] not consumed liquor or a controlled substance." MCL 600.2955a(2)(b).[3]

---

[3] We express no opinion whether the testimony of defendants' experts satisfies the standards of reliability of expert testimony under MRE 702 and *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct. 2786; 125 L Ed 2d 469 (1993).

As discussed by defendants, MCL 257.625a(6)(a) also supports the admissibility of the toxicology evidence. MCL 257.625a(6) provides, in pertinent part:

> The following provisions apply to chemical tests and analysis of a person's blood, urine, or breath, other than a preliminary chemical breath analysis:

> (a) The amount of alcohol or presence of a controlled substance or other intoxicating substance in a driver's blood or urine or the amount of alcohol in a person's breath at the time alleged as shown by chemical analysis of the person's blood, urine, or breath is admissible into evidence in any civil or criminal proceeding and is presumed to be the same as at the time the person operated the vehicle.

Our Supreme Court has recognized that MCL 257.625a(6)(a) is a "flat statement" of admissibility, and that "[p]ursuant to the express language of the statute, test results 'are admissible . . . and will be considered.' " *People v Wager*, 460 Mich 118, 121, 124-125; 594 NW2d 487 (1999), citing MCL 257.625a(6)(b)(*ii*).

Plaintiffs cite *Bergman* in support of their argument that evidence of the presence of THC in the decedent's blood, without more, is irrelevant. In *Bergman*, the defendant was convicted of operating a vehicle under the influence of intoxicating liquor or a controlled substance causing death when he crossed the centerline and struck a pickup truck in the oncoming lane, killing the occupants. *Bergman*, 312 Mich App at 474-475. On appeal, the defendant argued that the trial court had erred "by excluding evidence of intoxicants and controlled substances in the blood stream of . . . the driver of the [truck struck by the defendant]," because such evidence was relevant to establishing that driver's negligence. *Id*. at 482. This Court disagreed, concluding that the excluded evidence was not probative of any intervening or superseding cause to break the causal link between the defendant's driving and the deaths of the occupants of the other truck. *Id*. at 486. However, this determination was based on the general premise that criminal liability will not attach when the result of the defendant's conduct is viewed as too remote or unnatural and that a superseding or intervening cause, such as gross negligence, has broken the chain of causation. See *People v Feezel*, 486 Mich 184, 195; 783 NW2d 67 (2010) (CAVANAGH, J.). Ordinary negligence, however, does not break the chain of causation because it is foreseeable. *Id*. Thus, although this Court in *Bergman* also used the term "negligence, it appears that it actually found that without other evidence of misconduct on the part of the other driver, the evidence of intoxicants in his blood would not be relevant to show gross negligence to prevent criminal liability. *Bergman*, 312 Mich App at 486. Accordingly, *Bergman* is not dispositive of the instant case. Although Murphy's possible gross negligence is at issue in deciding his liability, the determination of the decedent's comparative negligence, if any, still remains if plaintiffs are able to convince a jury that Murphy was grossly negligent and the proximate cause of the accident. See *Laier v Kitchen*, 266 Mich App 482, 496; 702 NW2d 199 (2005) ("The standards for determining the comparative negligence of a plaintiff are the same as those of a defendant—the jury must consider the nature of the conduct and its causal relationship to the damages.") In addition, unlike in *Bergman*, defendants have offered other evidence of the decedent's negligence, e.g., that he was exceeding the speed limit. Moreover, *Bergman* did not discuss the import, if any, that MCL 257.625a(6)(a) would have on an analysis of this issue, or

the fact that evidence of violation of a penal statute creates a rebuttable presumption of negligence. *Klanseck*, 426 Mich at 86.

Accordingly, the trial court did not abuse its discretion by ruling that the decedent's toxicology results were relevant, and thus generally admissible under MRE 402.

Plaintiffs further argue that even if the evidence is marginally relevant, it should be excluded under MRE 403 because its probative value is substantially outweighed by the danger of unfair prejudice. As our Supreme Court observed in *People v Mills*, 450 Mich 61, 75-76; 537 NW2d 909 (1995), "[a]ll evidence offered by the parties is 'prejudicial' to some extent, but the fear of prejudice does not generally render the evidence inadmissible." "It is only when the probative value is substantially outweighed by the danger of unfair prejudice that evidence is excluded." *Id.* See also *Waknin*, 467 Mich at 335. To require that evidence be excluded under MRE 403, there must be "an undue tendency" for the evidence "to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one." *People v Vasher*, 449 Mich 494, 501; 537 NW2d 168 (1995).

As explained earlier, the toxicology results are relevant, particularly when considered with other evidence that the decedent was speeding, and the proposed testimony about the general effect of marijuana on brain chemistry, such as altering perception and decreasing reaction times or a person's ability to multi-task. This relevance is not "tangential" or "marginal," but would serve as a substantial basis for determining whether the decedent was also at fault, and to what extent. Plaintiffs suggest that a jury could be influenced by the "popular stereotype" of marijuana users and thereby unfairly decide the case based on emotional considerations rather than a proper evaluation of the evidence. We are not persuaded that this is an appropriate basis for excluding the evidence, which otherwise is relevant, particularly considering that plaintiffs may request a cautionary instruction to ensure that the jury considers the evidence only for its permissible purpose and does not rely on any preconceived prejudices. Juries are presumed to follow their instructions. *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Accordingly, the trial court did not abuse its discretion by refusing to exclude the evidence under MRE 403.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kathleen Jansen