*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KENNEDY AMMAN and CORI AMMAN,

      Plaintiffs-Appellees,

v

CHESANING UNION SCHOOLS, CHESANING
HIGH SCHOOL, and KIMBERLY VINCKE,

      Defendants-Appellants.

UNPUBLISHED
August 27, 2020

No. 346483
Saginaw Circuit Court
LC No. 17-033583-CZ

KENNEDY AMMAN and CORI AMMAN,

      Plaintiffs-Appellees,

v

BETHANY BUSCH,

      Defendant-Appellant.

No. 346484
Saginaw Circuit Court
LC No. 17-035098-CZ

Before: GADOLA, P.J., and GLEICHER and STEPHENS, JJ.

PER CURIAM.

In these consolidated cases, defendants, Chesaning Union Schools, Chesaning High School, Kimberly Vincke, and Bethany Busch, appeal by right the trial court's order denying their motion for summary disposition under MCR 2.116(C)(7) and (10). We affirm in part and reverse in part.

## I. FACTS

This case involves an accident at Chesaning High School in which plaintiff, Kennedy Amman, was injured when a piano fell off a dolly and onto her left foot. At the time of the accident, Kennedy was a student at the school and participated in choir class. Each day, the choir teacher,

-1-

defendant Busch, moved a piano on a dolly from the side of the choir room to the center of the choir room. There is no indication that the piano was ever removed from the dolly, and instead remained on the dolly even when in use. Testimony indicated that the piano is heavy and requires two maintenance workers to lift it onto the dolly. Testimony also indicated that the school did not have a policy requiring students to keep away from the piano and dolly while it was being moved.

On the day of the accident, Busch moved the piano toward the center of the room as she typically did. As Kennedy and another student walked near Busch while she moved the piano, the piano fell off the dolly onto Kennedy's foot. Kennedy's friend and Busch together lifted the piano off Kennedy's foot. The school principal, defendant Vincke, was contacted and arrived at the choir room shortly thereafter. Vincke wheeled Kennedy to the school office using a wheelchair.

Testimony indicated that although Kennedy was crying and in pain, there was no blood, and she was awake, coherent, and responsive. Vincke directed the school's receptionist to contact Kennedy's mother, plaintiff Cori Amman. According to the receptionist, while speaking with Cori she asked Cori whether she should call 911 for Kennedy, but Cori declined. Kennedy testified that when she requested that Vincke call 911, Vincke explained that Cori was on her way. When Cori arrived, she did not call an ambulance, choosing instead to take Kennedy to her own physician rather than to an emergency room. When her physician was unable to remove Kennedy's boot from her foot, however, Cori followed the physician's recommendation and drove Kennedy to an emergency room. It was thereafter determined that Kennedy had suffered substantial injury to her foot, requiring numerous surgeries.

Plaintiffs brought this action, alleging that Busch and Vincke were grossly negligent, and that the school also was liable, contending that the events fell within the public building exception to governmental immunity because the piano and dolly constituted a dangerous and defective condition of the school building. After discovery, defendants moved for summary disposition under MCR 2.116(C)(7), (8), and (10), arguing that plaintiffs' claims were barred by governmental immunity. Defendants specifically argued that plaintiffs could not show that Busch's and Vincke's actions rose to the level of gross negligence, and that plaintiffs could not show that the piano and dolly were a fixture of the building, making the public building exception inapplicable.

In response to defendants' motion, plaintiffs submitted affidavits from three students. Two of the students asserted that before the accident they heard Busch state that the piano and dolly were "unstable" and "wobbly," and that she planned to report the piano's condition to the school office. All three students stated in their affidavits that they had heard the prior choir teacher make similar remarks during her tenure. Plaintiffs also argued that in her deposition, Cori testified that after the accident Busch told her that she had previously discussed the piano with other teachers and told them that the piano and dolly was "an accident waiting to happen" and that the piano needed to be bolted down.

At the hearing on the motion for summary disposition, defendants challenged the admissibility of the three affidavits, arguing that plaintiffs had violated the discovery scheduling order by failing to provide the affidavits earlier, and also that the affidavits contained inadmissible hearsay. Plaintiffs responded that the three students were included on a supplemental witness list long before discovery ended and that nothing prohibited defendants from contacting the students.

The trial court held that the statements in the affidavits were not hearsay and were admissible under MRE 801(d)(2) as admissions by a party-opponent.

The trial court denied defendants' motion for summary disposition,[1] concluding that reasonable minds could differ on whether Busch and Vincke were grossly negligent, and also regarding whether the piano and dolly constituted a fixture. The trial court also denied defendants' subsequent motion for reconsideration. Regarding the affidavits, the trial court concluded that defendants were aware that the three students were potential witnesses and could have deposed them or taken other action. The trial court held, however, that defendants would be permitted additional time to depose the witnesses prior to trial. Defendants now appeal.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). Summary disposition under MCR 2.116(C)(7) is warranted when a claim is barred by immunity granted by law. *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 432; 824 NW2d 318 (2012). When reviewing a trial court's decision on a motion for summary disposition under MCR 2.116(C)(7), this Court considers all documentary evidence and accepts the complaint as factually accurate unless it is specifically contradicted by affidavits or other documentation. *Frank v Linkner*, 500 Mich 133, 140; 894 NW2d 574 (2017).

Summary disposition under MCR 2.116(C)(10) is warranted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Dawoud v State Farm Mut Auto Ins Co*, 317 Mich App 517, 520; 895 NW2d 188 (2016). When reviewing a trial court's decision granting summary disposition under MCR 2.116(C)(10), we consider all documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Id*. A genuine issue of material fact exists when reasonable minds could differ regarding an issue left open by the record. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019).

We review de novo the applicability of governmental immunity, which is a question of law. *Ray v Swager*, 501 Mich 52, 61; 903 NW2d 366 (2017). We also review de novo issues involving the proper interpretation of statutes, *Frank*, 500 Mich at 140-141, and the interpretation of the rules of evidence. *Chapin v A & L Parts, Inc*, 274 Mich App 122, 126; 732 NW2d 578 (2007). We review for an abuse of discretion a trial court's decision regarding the admission of evidence. *Id*.

---

[1] The trial court considered the motion under MCR 2.116(C)(7) and (10), explaining that because defendants relied upon documentary evidence outside of the pleadings, the motion could not properly be brought under MCR 2.116(C)(8).

## B. THE AFFIDAVITS

Defendants contend that the trial court abused its discretion by considering the three student affidavits in denying their motion for summary disposition because plaintiffs violated the trial court's discovery scheduling order by not producing the affidavits earlier. Defendants further contend that the affidavits contain inadmissible hearsay. We disagree.

Michigan has a broad discovery policy. *Augustine v Allstate Ins Co*, 292 Mich App 408, 419; 807 NW2d 77 (2011). The purpose of pretrial discovery is to make available to the parties all the relevant facts that might be admitted into evidence in advance of trial, and to advise the parties of the witnesses that might be called. See *Grubor Enterprises, Inc v Kortidis*, 201 Mich App 625, 628; 506 NW2d 614 (1993). The trial court, however, has latitude in directing the progress of discovery in a lawsuit. MCR 2.401(B)(2)(a)(*iii*) grants the trial court the power to define the period of discovery through a scheduling order. Establishing a cutoff date for discovery and enforcing or extending the deadlines established by the trial court in a scheduling order are within the trial court's traditional exercise of authority. See *Kemerko Clawson, LLC v RXIV Inc*, 269 Mich App 347, 349-351; 711 NW2d 801 (2005). Similarly, the trial court has discretion to determine whether to sanction a party for failing to comply with a scheduling order. See *Duray Dev, LLC v Perrin*, 288 Mich App 143, 164; 792 NW2d 749 (2010).

In this case, defendants fail to show what harm befell them from the late production of the affidavits that would warrant the sanction of excluding the affidavits. The trial court extended discovery on several occasions, and plaintiffs' supplemental witness list included the three students as potential witnesses to be called at trial. Defendants had knowledge of, and the ability to contact, the students long before discovery ended, and the trial court ultimately granted defendants additional time to depose the students after learning of the affidavits. Because defendants have not demonstrated that the late production of the affidavits prejudiced their motion, we conclude that the trial court did not abuse its discretion by permitting plaintiffs to submit the affidavits in support of their response to defendants' motion for summary disposition.

We also conclude that the statements in the affidavits allegedly made by Busch do not constitute inadmissible hearsay. Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Here, two students asserted that before the accident they heard Busch state that the piano and dolly were "unstable" and "wobbly," and that she planned to report the piano's condition to the school office. These statements were not offered to prove that the piano was, in fact, wobbly or unstable, but rather were offered to prove that Busch believed those assertions to be true. These statements therefore are not hearsay. The statements are also not hearsay if offered against Busch because they are a party's own statement offered against that party. MRE 801(d)(2)(A).[2] We agree, however, that if the statements in the affidavits attributed to the former choir teacher that

---

[2] We reject defendants' argument that MRE 613(b) renders MRE 801(d)(2) inapplicable. MRE 613(b) contains an explicit exception for the admissions of a party-opponent as defined in MRE 801(d)(2).

the piano on the dolly was unstable are offered to prove the truth of the matter asserted, they are inadmissible hearsay to the extent those statements are offered against Busch.

## C. GROSS NEGLIGENCE

Defendants further contend that the trial court erred in denying summary disposition to defendants Busch and Vincke on the grounds of governmental immunity. We agree that defendant Vincke is entitled to summary disposition, but disagree that the trial court erred by failing to grant summary disposition to defendant Busch.

Under the government tort liability act, MCL 691.1401 *et seq.*, government agencies and their employees are entitled to immunity from tort liability when they are engaged in the exercise or discharge of governmental functions. *Ray*, 501 Mich at 62. Specifically, MCL 691.1407(2) provides that a government employee acting within the scope of his or her authority is immune from tort liability, except in cases in which his or her actions constituted gross negligence. *Tarlea v Crabtree*, 263 Mich App 80, 89; 687 NW2d 333 (2004). Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). Whether a government employee's conduct constitutes gross negligence under MCL 691.1407 generally is a question of fact, but if reasonable minds could not differ, the trial court may grant summary disposition. *Briggs v Oakland Co*, 276 Mich App 369, 374; 742 NW2d 136 (2007). Ordinary negligence cannot create an issue of material fact on whether gross negligence occurred; instead, a party must show that the actions were reckless. *Wood v Detroit*, 323 Mich App 416, 423-424; 917 NW2d 709 (2018). This Court has described gross negligence as

> almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge. [*Tarlea*, 263 Mich App at 90.]

The argument that a government actor could have done more to avoid the risk of harm is insufficient under Michigan law to establish gross negligence because "with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result." *Id*. In fact, "saying that a defendant could have taken additional precautions is insufficient to find ordinary negligence, much less recklessness." *Id*.

In this case, the parties do not dispute that defendants Busch and Vincke were government employees acting within the scope of their authority and that they were engaged in the exercise or discharge of a governmental function at the time of the accident. Defendants contend, however, that plaintiffs failed to establish that Busch and Vincke were grossly negligent, and therefore plaintiffs' claims against the two individuals are barred by governmental immunity.

With regard to defendant Busch, the evidence offered by plaintiffs that Busch acted with gross negligence are the statements of two students that before the accident they heard Busch comment that the piano was unstable and that Busch was planning to tell, or already had told, the front office about it. In addition, plaintiffs point to the deposition testimony of Cori, Kennedy's mother, that after the accident Busch told her that she had discussed the piano with other teachers

and had "told them this is an accident waiting to happen" and that the piano needed to be bolted down. This evidence, when viewed in the light most favorable to plaintiffs, provides at least some evidence that Busch was aware that the piano was not secure on the dolly. The parties, no doubt, will dispute whether Busch made such comments and also whether the alleged comments, even if made, demonstrate gross negligence. However, viewing the evidence in the light most favorable to plaintiffs, reasonable minds could differ regarding whether Busch's conduct constituted gross negligence. See *Briggs*, 276 Mich App at 374.

We conclude, however, that Vincke's actions, even when viewed in the light most favorable to plaintiffs, could not reasonably be viewed as gross negligence, or even ordinary negligence. The evidence demonstrated that Vincke went to the choir room and found Kennedy coherent and awake. Although Kennedy was clearly in pain, she was not bleeding. Cori, Kennedy's mother, was immediately contacted. Cori declined at that time to have the school call 911. Upon arriving at the school and assessing Kennedy's condition, Cori herself did not call for an ambulance nor take Kennedy to the emergency room, choosing instead to take Kennedy to her primary care physician. Only when advised by her primary care physician to take Kennedy to the emergency room did Cori do so. Under these circumstances, and viewing the evidence most favorably to plaintiffs, we conclude that reasonable minds could not differ in concluding that Vincke did not engage in conduct "so reckless as to demonstrate a substantial lack of concern for whether an injury results," MCL 691.1407(8)(a), by declining to call for an ambulance, and therefore was not grossly negligent. The trial court therefore erred in denying defendants' motion for summary disposition as to defendant Vincke.

## D. PUBLIC BUILDING EXCEPTION

Defendants also contend that the school defendants were entitled to summary disposition because plaintiffs' claims against them are barred by governmental immunity, given there is no issue of material fact regarding whether the piano and dolly constituted a fixture of the school building. We agree.

Government agencies are immune from tort liability when they are engaged in the exercise of a governmental function, and operating a school constitutes a governmental function. *Stringwell v Ann Arbor Pub Sch Dist*, 262 Mich App 709, 712; 626 NW2d 825 (2004). However, MCL 691.1406 provides an exception to the general rule of governmental immunity related to public buildings, and states in relevant part:

> Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition. Knowledge of the dangerous and defective condition of the public building and time to repair the same shall be conclusively presumed when such defect existed so as to be readily apparent to an ordinary observant person for a period of 90 days or longer before the injury took place. . . .

To avoid governmental immunity under the public building exception, a plaintiff must establish that

> (1) a governmental agency is involved, (2) the public building in question is open for use by members of the public, (3) a dangerous or defective condition of the public building itself exists, (4) the governmental agency had actual or constructive knowledge of the alleged defect, and (5) the governmental agency failed to remedy the alleged defective condition after a reasonable amount of time. [*Renny v Dep't of Transp*, 478 Mich 490, 496; 734 NW2d 518 (2007).]

In this case, for purposes of this issue the parties dispute only whether the piano on the dolly constituted a dangerous or defective condition of the school. To establish that the public building exception applies, the alleged dangerous condition must be "a defect of the building itself and not merely a transient condition" of the building. *Johnson v City of Detroit*, 457 Mich 695, 703-704; 579 NW2d 895 (1998) (citation omitted). A fixture attached to a building is considered to be "of the building itself" and therefore can support a claim under the public-building exception. See *Fane v Detroit Library Comm*, 465 Mich 68, 77-78; 631 NW2d 678 (2001). A fixture is considered part of a public building when (1) it is annexed to the realty, (2) its adaptation or application to the realty is appropriate, and (3) it was intended as a permanent accession to the realty. *Id*. Annexation can be actual, meaning permanently affixed to the building, or constructive, meaning that the item cannot be removed without impairing the value of both the item and the building. *Id*. at 79-80.

Whether an item constitutes a fixture is determined case by case. *Velmer v Baraga Area Sch*, 430 Mich 385, 394; 424 NW2d 770 (1988). In *Velmer*, our Supreme Court held that a heavy milling machine with an attached electrical conduit requiring an electrician to disconnect it could constitute a fixture. The Court reasoned that the machine was "heavy, stationary, and not subject to tipping over or being thrown." *Id*. at 393. By contrast, in *Carmack v Macomb Co Community College*, 199 Mich App 544, 547; 502 NW2d 746 (1993), we held that a set of gymnastic uneven parallel bars, which was "easily moveable and was removed on an almost daily basis," was not part of the school building, despite being temporarily bolted to the floor. In *Fane*, our Supreme Court held that a ramp placed "at the doorstep" to a building but not affixed to it could not support a claim that it was constructively annexed to the building. *Fane*, 465 Mich at 79-80.

In this case, the piano and dolly were not permanently affixed to the choir room. Rather, the piano was left on the dolly for the purpose of moving it, and it was in fact moved each day by the teacher. The piano and the dolly thus were not a fixture and therefore cannot form a dangerous or defective condition necessary to support the public building exception to governmental immunity. Because plaintiffs did not establish a claim under the public building exception, the trial court erred in denying summary disposition to the school defendants.

We affirm the trial court's order denying summary disposition to defendant Busch. We reverse the trial court's order denying summary disposition to Vincke and the school defendants, and we remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens